## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| **ALEXIS GUERRERO,** <br> 30234 Stoneybrooke Drive <br> Salisbury, MD 21804 | * <br> <br> * |
| *Plaintiff,* | * CIVIL CASE NO. _____ |
| v. | * |
| **OLLIE'S BARGAIN OUTLET, INC.,** <br> 6295 Allentown Blvd, Suite 1 <br> Harrisburg, PA 17112 <br>   **Serve:** CSC-Lawyers Incorporating Service Co. <br>         7 St. Paul Street, Suite 820 <br>         Baltimore, MD 21202 | * <br> <br> * <br> <br> * <br> <br> * |
| *Defendant.* | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **COMPLAINT**

Plaintiff Alexis Guerrero ("Mr. Guerrero") through counsel makes this Complaint against Ollie's Bargain Outlet, Inc. ("Ollie's"), after he was assaulted by an Ollie's employee with a seven-inch knife because he is Dominican-American. Mr. Guerrero and his sister, Melida Guerrero ("Mrs. Guerrero"), were the victims of a violent, racially-motivated assault by Richard Murray ("Mr. Murray"), an Ollie's employee, while shopping at the Ollie's in Salisbury, Maryland. Mr. Guerrero brings suit against Ollie's for race discrimination, pursuant to 42 U.S.C. § 1981, and under the common law of Maryland for negligent supervision and negligent retention. Mr. Guerrero seeks declaratory and injunctive relief, awards of compensatory and punitive damages, and attorneys' fees and costs.

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1331 in that this action asserts a violation of rights secured by the laws of the United States. This Court has supplemental jurisdiction over Mr. Guerrero's state claims, which are pendant to his federal claims.

2. Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b), as the events giving rise to the claim occurred in the District of Maryland, and there is no other district in which this action may be brought.

## PARTIES

3. Mr. Guerrero is a resident of Salisbury, Wicomico County, Maryland. He is Black; he was born in the Dominican Republic and moved to Salisbury as a youth.

4. Ollie's is a Pennsylvania corporation licensed to do business in this State and owns and operates a store in Salisbury, Wicomico County, Maryland.

5. At all times relevant to this Complaint, Ollie's was Mr. Murray's employer. Mr. Murray is a White male and fifty-two years of age.

## FACTS COMMON TO ALL COUNTS

6. On June 6, 2020, at approximately 4:00 p.m., Mr. Guerrero and his sister were shopping at Ollie's for ceramic flower pots.

7. Ollie's displayed a number of flower pots in the outdoor area in front of the store.

8. After locating one suitable pot in that outdoor area, Mr. Guerrero and his sister looked for a matching pot.

9. As they searched, an Ollie's employee, later identified as Mr. Murray, brought a pallet of flower pots to the outside area.

10. Instead of unpacking the pots, Mr. Murray moved away from the pots and stood.

11. Mr. Guerrero then walked up to the pallet to search for a matching pot and found one. He called to his sister, "There is another one here" and began taking off the yellow plastic string around the pots to get to the matching pot.

12. Instead of asking whether Mr. Guerrero needed help, Mr. Murray pulled out a knife with a large seven-inch blade and started jabbing it towards Mr. Guerrero and yelling, "Hey you! You cannot touch that! Move over there!"

13. Mr. Guerrero immediately backed away from the pots in fear of the knife.

14. Mr. Murray then moved toward the pallets while staring Mr. Guerrero down and began aggressively cutting the yellow plastic string.

15. Mr. Guerrero did not move or say anything. He waited as Mr. Murray unwrapped the pallet so he could get the pot he wanted to purchase. This apparently enraged Mr. Murray further, who stood up, walked toward Mr. Guerrero with his arm outstretched and the blade of the knife pointed toward Mr. Guerrero's face, and yelled, "Get them pots over there."

16. Attempting to diffuse the situation, Mr. Guerrero said calmly, "You just do your job because you probably had a bad day. My job was to come here and buy a pot."

17. Still wielding the knife at Mr. Guerrero's face, Mr. Murray yelled, "Let me do my job."

18. At this point, Mr. Guerrero went inside Ollie's to speak to the manager on duty.

19. As Mr. Guerrero walked inside, Mr. Murray yelled at him, "Y'all motherfucker niggas![1] I will stab y'all. That's why this fucking country is the way it is! Go back to your fucking country. Go back to Haiti."

---

[1] The repugnant language is reproduced verbatim for accuracy.

20. Mr. Murray must have believed Mr. Guerrero was from Haiti based upon his Dominican accent, which he retains despite being a permanent resident of the United States for more than thirty years.

21. Upon entering the store, Mr. Guerrero saw a cashier standing at a register. Mr. Guerrero told the cashier there was an employee outside who had just thrusted a large knife in his face, threatened to stab him, and screamed racial slurs at him.

22. The cashier responded, "I know exactly who you're talking about, he is not supposed to have that knife."

23. The knife wielded by Mr. Murray was not a box cutting knife. It looked to be a Bowie or large butcher knife.

24. The cashier directed Mr. Guerrero to the manager, who she said was at the back of the store.

25. Mr. Guerrero found the manager at the back of the store flirting with two women.

26. Mr. Guerrero interrupted the manager's conversation with the women to report that one of his employees had pulled a knife on him and his sister and was hurling racial epithets.

27. The manager, who only identified himself as "Mike G.," responded he would "Get to it when [he] had the chance," and turned his attention back to the two women.

28. Seconds later, screams to "Call the cops!" could be heard from the front of the store.

29. Mr. Guerrero, followed by Mike G., raced toward the screams to find a number of bystanders surrounding his sister and Mr. Murray and yelling "Call the cops!".

30. While Mr. Guerrero had gone to look for the manager, the situation had escalated. According to Mrs. Guerrero, Mr. Murray had lunged toward her with his knife and had yelled, "I

will stab you fucking nasty bitch!" Mr. Murray further threatened, "I have guns!" and "I will shoot you and I will shoot them," while pointing his knife at the onlookers, which had caused them to scream "Call the cops!". Mr. Murray also picked up a ceramic pot as if to throw it as Mrs. Guerrero.

31. With tensions mounting, an Ollie's employee tried to usher Mr. Murray inside of the store, but Mr. Murray continued to yell, "Fuck you bitch! You motherfucking ass! Go back to your country you nasty ass Black bitch!"

32. At this Mike G. finally intervened and walked Mr. Murray toward the back of the store.

33. Meanwhile another Ollie's employee by the name of Martha Wynhman came to console Mr. Guerrero and his sister. According to Ms. Wynhman, Mr. Murray had been told not to use or bring that knife to work, but did it anyway.

34. When police arrived approximately fifteen minutes later, Mike G., who had been holding Mr. Murray in the back office, walked Mr. Murray to his vehicle. Mr. Murray got in his vehicle, did several "donuts" in front of the police, burnt his tires, and sped out of the parking lot.

35. At no time did Mike G. apologize to Mr. Guerrero or his sister or acknowledge Mr. Murray had acted illegally.

36. One of the onlookers recorded Mr. Murray leaving on Facebook Live and narrated the injustice she had witnessed calling her post, "Injustice anywhere is a threat to justice everywhere."

37. Mrs. Guerrero pursued criminal charges against Mr. Murray, which resulted in his conviction of second-degree assault.

38. As a result of the attack, Mr. Guerrero experienced emotional distress accompanied by physical symptoms. Mr. Guerrero is a permanent resident of the United States; he pays taxes; and has worked his entire adult life. He is a husband and father of two minor children. The incident at Ollie's has caused Mr. Guerrero many sleepless nights worrying about his children. He never wants his children to be treated the way he was by Ollie's or Mr. Murray, or to be made to feel like a second-class citizen in the community in which they work, live, and contribute.

## CAUSE OF ACTION

### COUNT I
### (§ 1981 – RACE DISCRIMINATION)

39. The facts alleged are incorporated by reference.

40. Mr. Murray and Mike G. acted out of racial animus and impeded Mr. Guerrero's ability to enter into, or enjoy the benefits of, a contractual relationship, including purchasing goods from Ollie's.

41. Mr. Guerrero was a customer of Ollie's and intended to purchase two matching ceramic pots. Mr. Murray interfered with Mr. Guerrero's right to contract by pulling a knife on Mr. Guerrero while he shopped, calling him a "motherfucking nigga," and telling Mr. Guerrero he could only chose from the pots on the ground. Mr. Guerrero reported Mr. Murray's reprehensible and discriminatory treatment to Mike G., who refused to take any remedial action and condoned Mr. Murray's conduct through his inaction.

42. Ollie's, acting through its local management, denied Mr. Guerrero the right to make and enforce contracts and treated him with woefully inferior service than that afforded to Whites with the result that Mr. Guerrero could not purchase the pots he desired because of his skin color and national origin.

**WHEREUPON**, Mr. Guerrero respectfully requests this Honorable Court grant the following relief:

A.  Enter a judgment in favor of Mr. Guerrero and against Ollie's for compensatory damages in the form of emotional distress and mental anguish;

B.  Enter a judgment in favor of Mr. Guerrero and against Ollie's for punitive damages;

C.  Enter a declaratory judgment holding that the Ollie's violated Mr. Guerrero's rights under the laws of the United States;

D.  Assess reasonable attorneys' fees and costs of suit in favor of Mr. Guerrero and against Ollie's; and

E.  Grant Mr. Guerrero such other and further relief as the nature of his cause may warrant.

## COUNT II
## NEGLIGENT SUPERVISION

43.  The facts alleged are incorporated by reference.

44.  Ollie's had a duty to supervise Mr. Murray interacting with customers like Mr. Guerrero and his sister, and a duty to ensure the safety of its customers while they shopped.

45.  Ollie's knew that Mr. Murray brought a large Bowie or butcher knife to work and allowed him to do so even though Mr. Murray did not need the knife to effectuate his duties. Given the boldness and audaciousness in which Mr. Murray hurled racial slurs at Mr. Guerrero and his sister while they shopped, it is likely he has mistreated other Black shoppers. Indeed, when Mr. Guerrero went to report the assault, the cashier knew Mr. Murray was involved without Mr. Guerrero saying his name or describing his appearance.

46. Ollie's breached its duty to Mr. Guerrero by allowing him to continue carrying and using a Bowie or butcher knife at work and not adequately supervising Mr. Murray the day of the racially-motivated assault.

47. Ollie's breach of its duty to Mr. Guerrero was a proximate cause of the emotional distress suffered by Mr. Guerrero.

**WHEREUPON**, Mr. Guerrero respectfully requests this Honorable Court grant the following relief:

A. Enter a judgment in favor of Mr. Guerrero and against Ollie's for compensatory damages in the form of emotional distress and mental anguish;

B. Assess reasonable attorneys' fees and costs of suit in favor of Mr. Guerrero and against Ollie's; and

C. Grant Mr. Guerrero such other and further relief as the nature of his cause may warrant.

## COUNT III
## NEGLIGENT RETENTION

48. The facts alleged are incorporated by reference.

49. Ollie's had a duty to retain only competent, qualified, and safe employees.

50. Ollie's breached its duty of retention to Mr. Guerrero by retaining Mr. Murray in its employ knowing Mr. Murray was bringing a large Bowie or butcher knife to work despite Mr. Murray being warned it was not allowed in the workplace.

51. Ollie's actions in failing to exercise its duty to Mr. Guerrero by retaining an incompetent, unfit, racist, and dangerous employee was a proximate cause of the emotional distress suffered by Mr. Guerrero.

**WHEREUPON**, Mr. Guerrero respectfully requests this Honorable Court grant the following relief:

A. Enter a judgment in favor of Mr. Guerrero and against Ollie's for compensatory damages in the form of emotional distress and mental anguish;

B. Assess reasonable attorneys' fees and costs of suit in favor of Mr. Guerrero and against Ollie's; and

C. Grant Mr. Guerrero such other and further relief as the nature of his cause may warrant.

/s/
ROBIN R. COCKEY, Federal Bar No.02657
ASHLEY A. BOSCHÉ, Federal Bar No. 28800
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
410-546-1750
Fax:  410-546-1811
rrcesq@cbmlawfirm.com
bosche@cbmlawfirm.com
*Attorneys for Plaintiff*